```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

KAREN G. TOWNSEND,

                      Plaintiff,           05-CV-0847T

            v.                          **DECISION**
                                                  **and ORDER**

JO ANNE B. BARNHART,
Commissioner of Social Security,

                      Defendant.
_____

## **INTRODUCTION**

Plaintiff Karen Townsend ("Townsend" or "Plaintiff"), brings this action pursuant to Titles II and XVI of the Social Security Act, claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[1]  Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") who heard her case was erroneous because it was not supported by substantial evidence in the record and was based upon an erroneous legal standard.

Both the plaintiff and the Commissioner move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure.  The Commissioner claims that the ALJ's decision was supported by substantial evidence whereas the plaintiff claims the opposite.  Because this court finds that the

---

[1] This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated July 24, 2007.

Commissioner's decision was not supported by substantial evidence, judgment on the pleadings is hereby granted for the plaintiff.

## BACKGROUND

Plaintiff Karen Townsend applied for DIB and SSI on January 10, 2002 claiming that she became disabled on October 25, 2000 due to "major depression, panic, & anxiety attacks (Tr. 43, 46, 52-61, 65). At the time of her application, she was 42 years-old with an Associate's Degree in Accounting (Tr. 21, 47, 59, 332). Townsend had worked intermittently as an accounting/payroll clerk and an assistant manager from 1993 until 1998 (Tr. 54, 219).

The Social Security Administration denied Townsend's disability application initially and on reconsideration (Tr. 32-40). She then appealed and an administrative hearing was held in Buffalo before ALJ Eugene Bond on May 16, 2005 (Tr. 12, 22-26, 329). On August 1, 2005, the ALJ found that Townsend was not disabled and, on October 18, 2005, the Social Security Appeals Council denied review of the ALJ's decision (Tr. 5-7). The plaintiff then filed this action on November 30, 2005.

## DISCUSSION

**I.   JURISDICTION AND SCOPE OF REVIEW**

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, Section 405(g) directs that the

District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The plaintiff and the defendant both move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S.

§ 405(g) (2007). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

A District Court should order payment of Social Security disability benefits in cases where the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose. See Carroll v. Secretary of Health and Human Serv., 705 F.2d 638, 644 (2d Cir. 1981). The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made." Id. Because this court finds that (1) the ALJ's decision was not supported by substantial evidence and (2) the record contains substantial evidence of disability such that further evidentiary proceedings would serve no further purpose, judgment on the pleadings is hereby granted for the plaintiff.

**II.   STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..." 42 U.S.C. § 423(d)(1)(A) (concerning Old-Age, Survivors', and

Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments). An individual will only be considered "under a disability" if her impairment is so severe that she is both unable to do her previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id. Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. §§ 404.1572(b) and 416.972(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in her immediate area, whether a specific job vacancy exists for her, or whether she would be hired if she were to apply for work. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

   (i)   if the claimant is performing substantial gainful work, she is not disabled;

- (ii) if the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled;

- (iii) if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;

- (iv) if the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled;

- (v) even if the claimant's impairment or impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). The ALJ in this case performed the required five-step evaluation and determined that: (i) the plaintiff had not engaged in substantial gainful employment since her alleged disability onset date of October 25, 2000; (ii) the plaintiff's affective disorder was considered "severe" under §§ 404.1520(c) and 416.920; (iii) the plaintiff's impairment did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) the plaintiff was unable to perform her past relevant work as a payroll clerk and assistant manager, and; (v) the plaintiff retained the residual functional capacity ("RFC") to perform "less that the full range of light unskilled work or in the alternative,

less than the full range of sedentary with limitations" (Tr. 20-21).

This court holds that the ALJ's finding adverse to the plaintiff in step (iii) of the evaluation process [that the plaintiff's affective disorder did not equal a listed impairment] was not supported by substantial evidence in the record as a whole. The plaintiff's depression and anxiety satisfy the regulatory listings at 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

**III. THE PLAINTIFF'S DEPRESSION AND ANXIETY QUALIFY AS "LISTED IMPAIRMENTS" IN SATISFACTION OF STEP (iii) OF THE EVALUATION PROCESS.**

   **A.   The Functional Criteria of Sections 12.04B and 12.06B are Satisfied by Substantial Medical Evidence in the Record.**

Depressive syndrome and anxiety-related disorders will qualify as "listed impairments" in step (iii) of the evaluation process when, among other things, two of the following four functional criteria are met:

- Marked restriction of activities of daily living; or
- Marked difficulties in maintaining social functioning; or
- Marked difficulties in maintaining concentration, persistence, or pace; or
- Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04B, 12.06B. The record contains substantial evidence that the plaintiff experiences marked

difficulties in maintaining social functioning as well as marked difficulties in maintaining concentration, persistence, and pace.

Additionally, while §§ 12.04B and 12.06B require only two functional limitations, the record also contains some indications that the plaintiff experiences a third limitation. Both Sherrill Primo, Ph.D. and Wilberforce Tamaklo, M.D. reported that the plaintiff failed to maintain basic standards of personal hygiene (Tr. 263, 266, 325); see also (Tr. 221). Failure to maintain basic hygiene would indicate marked restriction of several basic activities of daily living. §§ 12.04B and 12.06B.

### 1. The Plaintiff Experiences Marked Difficulties in Maintaining Social Functioning.

Substantial medical evidence in the record shows that the plaintiff experiences marked difficulties in maintaining social functioning. Psychologist Joseph G. Langen noted that the plaintiff is "very limited socially" and diagnosed the plaintiff with "major depression" and "panic disorder with agoraphobia" (Tr. 178). Psychologist Sherrill L. Primo noted that the plaintiff was "unable to leave [the] house regularly [and had] problems maintaining routine social contact." (Tr. 264). Dr. Primo's diagnosis of the plaintiff was "dysthymic with anxiety features and social avoidance" (Tr. 263).

Consulting examining psychiatrist D.K. Singh, M.D. noted on September 4, 2001 that the plaintiff "experiences acute symptoms of

depression and anxiety which include social withdrawal" (Tr. 165). Dr. Singh continued, "Anxiety symptoms often lead to a panic reaction. The result of these symptoms has at this time affected her ability to adaptively function *in any sustained manner*." Id. (emphasis added). On August 15, 2001, Niagara County Mental Health Aide Stefani Perakis noted that the plaintiff "continues to have difficulty with social functioning" and Dr. Primo noted as recently as March 25, 2004 that the plaintiff had:

> "Very little contact only with select few on a short term basis or duration. Prefers to be alone."

(Tr. 169, 266). Examining consultative psychologist Rachel Hill noted on June 18, 2003 that the plaintiff "does not relate very well with other people" and, on February 7, 2005, psychiatrist Wilberforce Tamaklo, M.D., noted that the plaintiff was "very limited" in her ability to maintain "socially appropriate behavior without exhibiting behavior extremes" (Tr. 222, 325).

As to whether the plaintiff's difficulties maintaining social functioning satisfy the "marked" threshold, SSA regulations specify that "marked" means:

> ...more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C; see also 20 C.F.R. §§ 404.1520(a) and 416.920(a). The records from Dr. Langen,

Dr. Primo, Dr. Singh, CMHA Stefani Perakis, and Dr. Tamaklo show that the plaintiff's limitations interfere seriously with her ability to function independently, appropriately, effectively, and on a sustained basis. This court therefore finds that her difficulties in maintaining social functioning are marked.

### 2. The Plaintiff Experiences Marked Difficulties in Maintaining Concentration, Persistence, or Pace.

Substantial medical evidence in the record shows that the plaintiff experiences marked difficulties in maintaining concentration, persistence, or pace. Dr. Langen noted in his examination that the plaintiff "has had mental health problems since October 2000 in which she finds herself sick to her stomach, having diarrhea, having trouble concentrating and having suicidal thoughts." (Tr. 177). On September 4, 2001, Dr. Singh noted that the plaintiff's "acute symptoms of depression and anxiety ... include ... poor concentration." (Tr. 165).

Dr. Hill also noted "trouble concentrating" on June 18, 2003 (Tr. 220-21). However, Dr. Hill concluded that the plaintiff's attention and concentration were good because the plaintiff "could count ... could do simple calculations, and ... could do serial 3s" but, interestingly, Dr. Hill also noted that the plaintiff "could not do multiplication" despite having an Associate's Degree in Accounting (Tr. 220-21). In the end, Dr. Hill concluded that "the results of the present evaluation are somewhat consistent with an

allegation of a significant mental problem" and suspected bipolar disorder with "mild psychotic features" (Tr. 222). Dr. Hill then concluded that the plaintiff "has been sick for about five years and that is a very long time." (Tr. 223).

On December 12, 2003, Dr. Tamaklo noted that the plaintiff's "concentration has been poor" and reported that the plaintiff did not even attempt to spell "WORLD" backwards "because she couldn't concentrate." (Tr. 249-50). On February 16, 2004, Dr. Primo indicated that the plaintiff was "very limited" in her ability to maintain attention/concentration and, on March 25, 2004, Dr. Primo wrote that the plaintiff's "concentration is limited." (Tr. 263-67). Most recently, on February 7, 2005, Dr. Tamaklo indicated that the plaintiff's attention/concentration were "very limited." (Tr. 325).

Taken together as a whole, the records from Dr. Langen, Dr. Singh, Dr. Primo, Dr. Hill, and Dr. Tamaklo show that the plaintiff's limitations interfere seriously with her ability to function independently, appropriately, effectively, and on a sustained basis. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C; see also 20 C.F.R. §§ 404.1520(a) and 416.920(a). This court therefore finds that her difficulties in maintaining concentration, persistence, or pace are marked.

**B.    The Diagnostic Criteria of Sections 12.04A and 12.06A Are Satisfied with Regard to the Plaintiff's Depression and Anxiety.**

<u>        1.   The Plaintiff's Depressive Syndrome Satisfies the Regulatory Diagnostic Criteria of Section 12.04A.</u>

Depression will qualify as a "listed impairment" in step (iii) of the evaluation process if there is medically documented persistence, either continuous or intermittent, of depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities;
b. Appetite disturbance with change in weight;
c. Sleep disturbance;
d. Psychomotor agitation or retardation;
e. Decreased energy;
f. Feelings of guilt or worthlessness;
g. Difficulty concentrating or thinking;
h. Thoughts of suicide;
i. Hallucinations, delusions or paranoid thinking...

resulting in two of the four functional limitations previously described in section III-A of this Decision. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04A, 12.04B.

The plaintiff was diagnosed with depressive disorder by Dr. Singh, who upgraded the severity of the plaintiff's diagnosis to "Major Depression" as early as May 24, 2001 (Tr. 162, 165, 167). On May 8, 2002, Ramon Tan, M.D. stated that the plaintiff's "diagnosis remains Major Depression Recurrent with Anxiety Features improved under treatment." (Tr. 131) Dr. Tan then maintained that diagnosis through at least April 9, 2003 (Tr. 120-131). On June 18, 2003, Dr. Hill suspected bipolar disorder due to the

plaintiff's depressive symptoms and, on December 10, 2003, Dr. Tamaklo diagnosed major depressive disorder as well (Tr. 222, 251). Dr. Tamaklo then maintained that diagnosis through at least February 7, 2005 (Tr. 246-51, 325-28).

Anhedonia or pervasive loss of interest in almost all activities is documented in the record by Dr. Tamaklo (Tr. 249). Appetite disturbance was noted by Dr. Singh, Dr. Hill, and Dr. Tamaklo (Tr. 163-165, 167-68, 220, 249). Dr. Hill also noted that the plaintiff gained 75 pounds in a year and a half (Tr. 220). Sleep disturbance was noted by Dr. Singh, Dr. Langen, Dr. Hill, Dr. Tamaklo, and Dr. Primo (Tr. 163-65, 167-68, 176-77, 249, 266). Decreased energy was noted by Dr. Hill (Tr. 220). Feelings of guilt or worthlessness were noted by Dr. Hill and Dr. Tamaklo (Tr. 220, 249). Difficulty concentrating or thinking was noted by Dr. Singh, Dr. Langen, Dr. Hill, and Dr. Tamaklo. (Tr. 165, 168, 177, 220-21, 249). And thoughts of suicide were noted by Dr. Langen, Dr. Hill, Dr. Tamaklo, and Dr. Primo (Tr. 177, 220, 249, 267). This court therefore finds that at least four of the § 12.04A diagnostic criteria are documented by substantial medical evidence in the record.

### 2.  The Plaintiff's Anxiety-Related Disorder Satisfies the Diagnostic Criteria of Section 12.06A.

In step (iii) of the five-step evaluation, anxiety-related disorders will qualify as "listed impairments" if there are medically documented findings of:

> Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or...
>
> Recurrent and intrusive recollections of a traumatic experience which are a source of marked distress...

resulting in two of the four § 12.06B functional limitations previously described in section III-A of this Decision. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.06A, 12.06B.

The plaintiff was diagnosed with anxiety disorders by Dr. Singh, Dr. Langen, Dr. Hill, and Dr. Tamaklo (Tr. 161, 164-65, 177-78, 219-22, 246-50). On September 4, 2001, Dr. Singh stated that the plaintiff's anxiety symptoms lead to panic attacks and effect her ability to adaptively function in any sustained manner (Tr. 165). Dr. Singh also noted panic attacks on October 31, 2001 and acute anxiety on January 2, 2002 (Tr. 162, 164). On January 17, 2002, Dr. Singh noted that the plaintiff had "too much anxiety," was "extremely anxious," and that the plaintiff "doesn't want to be in a psychiatric ward" (Tr. 161). Dr. Langen noted panic attacks on March 4, 2002 and Dr. Hill noted attacks on June 18, 2003 (Tr. 177, 219-20). After an examination on December 10, 2003, Dr. Tamaklo also reported panic attacks and continued to report these attacks through at least February 7, 2005 (Tr. 246-50, 325).

Dr. Hill reported that the plaintiff "has nightmares and flashbacks" and that "her husband was very abusive to her"

(Tr. 220). Dr. Tamaklo noted that the plaintiff was date-raped at age 19 and diagnosed her with post-traumatic stress disorder relating to contemporaneous incidents involving her ex-husband and the death of her father (Tr. 246-50). Dr. Tamaklo maintained this post-traumatic stress syndrome diagnosis through at least February of 2005 (Tr. 325).

This court finds that the record contains substantial evidence of recurrent severe panic attacks and recurrent and intrusive recollections of a traumatic experience which are a source of marked distress. The diagnostic criteria of § 12.06A are therefore satisfied.

## CONCLUSION

This court finds that the Commissioner's decision denying the plaintiff's disability application was not supported by substantial evidence. The record contains substantial evidence of disability such that further evidentiary proceedings would serve no further purpose. I therefore grant judgment on the pleadings in favor of the plaintiff and remand this matter to the Social Security Administration for calculation of benefits.

ALL OF THE ABOVE IS SO ORDERED.

                                      s/Michael A. Telesca
                                        MICHAEL A. TELESCA
                                United States District Judge

Dated:    Rochester, New York
            August 10, 2007